```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

-------------------------------x
                               :
WEST WORLD MEDIA, LLC,         :
                               :
            Plaintiff,         :
                               :
v.                             :  Civil No. 3:11cv00169 (AWT)
                               :
IKAMOBILE LIMITED and          :
IKAMOBILE CORPORATION,         :
d/b/a ikamobile,               :
                               :
            Defendants.        :
-------------------------------x
```

**RULING ON DEFENDANTS' MOTION TO DISMISS**

The plaintiff, West World Media, LLC ("West World Media"), brings this action against the defendants, Ikamobile Limited and Ikamobile Corporation (collectively "Ikamobile"), setting forth a common law claim of "hot news" misappropriation (first cause of action) and a claim of violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA")(second cause of action).  Ikamobile has moved to dismiss the complaint for lack of personal jurisdiction, improper venue, improper service and failure to state a claim upon which relief can be granted.  For the reasons set forth below, the motion is being granted based on lack of personal jurisdiction.

I.   **Factual Background**

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following

1

circumstances." Monsky v. Moraghan, 127 F.3d 243, 244 (2d Cir. 1997). West World Media is a Connecticut corporation with its principal place of business in Ridgefield, Connecticut. Ikamobile Limited is incorporated in Delaware, and Ikamobile Corporation is incorporated in British Columbia, Canada. The principal place of business for Ikamobile is British Columbia, Canada.

West World Media is in the business of, inter alia, making movie showtime data available to paying entities around the world. West World Media collects, compiles, arranges and distributes movie showtime listings and movie data for nearly every movie theatre in the United States, as well as theatres around the world. Entities, such as Google and AOL, pay West World Media a license fee for the right to access and distribute West World Media's movie showtime data. West World Media sends the information from its servers to the licensees' servers through a direct feed.

West World Media expends significant resources to provide up to date showtime information. It employs more than forty technicians to collect, select, arrange and verify the movie data it provides, and it has also has developed a database to maintain and distribute the information to its customers. Because the showtime information is time sensitive, the database is continually updated by West World Media employees.

Ikamobile is a software company that created and made available to the public an application, known as "Movie Finder," for cell phones using the Android operating system and software.  Movie Finder provides access to movie showtimes for theatres throughout the United States and around the world.  The application is available as a free download from the Android Marketplace.  Ikamobile does not make a profit from users when they download Movie Finder. Ikamobile instead sells advertising space on the application's display to companies such as Google Ads and Ad Mob.  As more individuals download Movie Finder, more individuals will see the displayed advertisements.  Therefore, the advertisers pay more for the advertising space and Ikamobile makes a greater profit as the number of downloads increases.

In December 2010, Ikamobile's founder Joseph Luk ("Luk") sent an email to MovieTickets.com, an affiliate of West World Media, proposing a business deal wherein Ikamobile would re-direct its Movie Finder users to MovieTickets.com to purchase tickets in exchange for a percentage of the ticket revenue. In the email, Luk touted the number of "ad impressions" that Movie Finder received each month.  The email was promptly forwarded to West World Media's VP of Sales and Business Development, Hasaun Harris ("Harris").  Harris emailed Luk offering to set up a time to speak by telephone the following

day.  Luk responded by email the same day, again referencing the number of views that Movie Finder received each month.

Harris and Luk spoke by telephone on December 16, 2010. During the call, Harris learned that Ikamobile was not paying for the movie data that it displayed in Movie Finder.  Harris provided Luk with license information and informed Luk that if Ikamobile did not license the data, Ikamobile ran the risk of being sued for data piracy.

Harris suspected that Ikamobile was using West World Media's movie information as its source of showtimes for Movie Finder.  On December 17, 2010, West World Media's information technology department ("IT Department") confirmed that Ikamobile was using its data.  The IT Department inserted a number of false entries (a technique known as "seeding") into West World Media's movie showtime database, and when those false entries showed up on Movie Finder, West World Media confirmed its belief that Ikamobile was using its data. Harris emailed Luk on December 20, 2010 to confirm their conversation and inquire whether Ikamobile wished to license West World Media's data.  Harris also informed Luk that if Ikamobile did not pay for the information, Ikamobile ran a significant risk of being sued.  Luk did not respond and has not contacted West World Media since.

After Ikamobile filed the instant motion to dismiss, West World Media's IT Manager, Frank Taylor ("Taylor"), downloaded

4

the Movie Finder application onto his Android phone.  He ran multiple searches from West World Media's headquarters for movie showtime information for theatres throughout Connecticut.  Taylor was able to access the information and view the advertisements on the screen each time Movie Finder was accessed.  Because Ikamobile did not enter into an agreement with MovieTickets.com, Movie Finder users cannot purchase tickets through the application.

West World Media believes that Ikamobile is taking its information through a process known as "scraping."  It believes that when a Movie Finder user seeks information, the application accesses the movie showtime information posted on the Internet by one of West World Media's licensees.  The application then converts the information into the Movie Finder format, which is then displayed to the user.  West World Media does not believe that Ikamobile maintains a database of showtime information or that Ikamobile takes the information directly from West World Media's servers.

## II.  Legal Standard

On a rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996), cert. denied, 519 U.S. 1006 (1997).  Where a defendant challenges "only the sufficiency of the plaintiff's factual

allegation, in effect demurring by filing a Rule 12(b)(2) motion, the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction." Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990). "When a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials . . . the allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." See Transp., Wiking, Trader, Schiffanhtsgesellschaft, MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993) (quoting Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990) (per curiam) (citations omitted), cert. denied, 498 U.S. 1068 (1991)). However, "[i]f the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." Id.

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

6

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 550, 555 (2007), citing Papasan v. Allain, 478 U.S. 265, 286 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation").  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 557).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)."  Id. (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Id. at 1974.  "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  Mytych v. May Dept. Store Co., 34 F. Supp. 2d 130, 131 (D. Conn. 1999), quoting Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." United States v. Yale New Haven Hosp., 727 F. Supp. 784, 786 (D. Conn. 1990) (citing Scheuer, 416 U.S. at 232).

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." <u>Samuels v. Air Transp. Local 504</u>, 992 F.2d 12, 15 (2d Cir. 1993).

## III. Discussion

"A trial court may exercise jurisdiction over a foreign defendant only if the defendant's intrastate activities meet the requirements both of [the state's long-arm statute] and of the due process clause of the federal constitution." <u>Thomason v. Chem. Bank</u>, 234 Conn. 281, 285-86 (1995). "[The] first inquiry must be whether our long-arm statute authorizes the exercise of jurisdiction under the particular facts of this case. Only if we find the statute to be applicable do we reach the question whether it would offend due process to assert jurisdiction." <u>Lombard Bros., Inc. v. Gen. Asset Mgmt. Co.</u>, 190 Conn. 245, 250 (1983).

The plaintiff contends that the court has long-arm jurisdiction over Ikamobile under Conn. Gen. Stat. § 33-929(f)(2), which provides in pertinent part that:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: . . . (2) out of any

8

>business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state[.]

Conn. Gen Stat. § 33-929(f)(2)(2011).

"Connecticut courts apply a broad interpretation of solicitation in the context of § 33-929 and have focused upon whether a defendant's activities are directed at increasing that defendant's general consumer bases." Powder Coating Consultants v. Powder Coating Inst., No. 09CV200, 2010 U.S. Dist. LEXIS 13095, at *7 (D. Conn. Feb. 16, 2010). However, where the defendant's activities do not specifically target Connecticut consumers, "there can be no purposeful availment of the laws of the State of Connecticut, and therefore long-arm jurisdiction cannot be proper." Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Grp., Inc., 312 F. Supp. 2d 247, 257 (D. Conn. 2004).

In Thomason, the Connecticut Supreme Court held that where a New York bank advertised specifically to residents of Connecticut, the exercise of the court's long-arm jurisdiction[1]

---

[1] At the time that Thomason was decided, Conn. Gen. Stat. § 33-411(c)(2) addressed the exercise of long-arm jurisdiction with regard to solicitation of business by foreign corporations. § 33-411(c)(2) reads in pertinent part as follows:
>Every foreign corporation shall be subject to suit in this state by a resident of this state . . . on any cause of action arising . . . (2) out of any business solicited in this state . . . if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were

9

was proper.  234 Conn. at 298.  The bank had placed numerous advertisements in newspapers and magazines that had substantial circulation in Connecticut, declaring that the bank was the "number one bank" for Connecticut businesses and individuals.  Id.  Because the bank had engaged in "affirmative measures designed to attract Connecticut customers . . . [creating] an organizational network that is likely to prompt a significant number of Connecticut residents to place business with the bank," id. (internal citations and quotation marks omitted), the Connecticut long-arm statute permitted the exercise of jurisdiction over the bank.

Similarly, in Powder Coating Consultants, long-arm jurisdiction under § 33-929(f)(2) was permitted where a foreign defendant sent advertisements through mail and email to members of its mailing list who were located in Connecticut.  The advertisements accompanied invoices that were sent to the Connecticut members, and though the defendant had not achieved a significant membership presence in Connecticut, the solicitations were designed to increase its consumer base.  See 2010 U.S. Dist. LEXIS 13095, at *8.  The court found that the "solicitations are repeated and on-going

---

accepted within or without the state . . . Conn. Gen. Stat. § 33-411(c)(2)(1995).  Although the current statute superceding § 33-411(c)(2) had been adopted at the time Thomason was decided, the current statute did not become effective until January 1, 1997.

10

so that it is reasonably foreseeable that [the defendant] would be haled into court in Connecticut with regard to the business sought through its solicitations." Id. at *9. Because the solicitations were on-going and directed at Connecticut, the requirements for jurisdiction under the Connecticut long-arm statute were met.

Where advertisements may be viewed in Connecticut but have not been purposefully directed at the state, the requirements for jurisdiction under § 33-929(f)(2) are not satisfied. In Am. Wholesalers Underwriting, the court held that the defendant's advertisements in national magazines and on one web site were insufficient to satisfy the requirements for jurisdiction under Connecticut's long-arm statute. See 312 F. Supp. at 256. The court compared the defendant's advertisements with those in Thomason and found that they were materially different. Unlike the advertisements in Thomason, the defendant's advertisements did not specifically mention Connecticut and there was no evidence that the advertisements were specifically targeting Connecticut consumers. Because there was no such specific targeting of Connecticut consumers, the court held that the exercise of long-arm jurisdiction would not be proper. Id.

Likewise, in Milne v. Catuogno Court Reporting Servs., Inc. the court held that the advertisement of the defendant's services via an internet web site was insufficient to satisfy

11

the requirements for long-arm jurisdiction over the defendant under § 33-929(f)(2).  239 F. Supp. 2d 195, 201 (D. Conn. 2002).  The defendant's web site provided viewers with a telephone number to call to inquire about its services, and because viewers could not order any services directly from the web site, the court determined that the web site was passive and informational in nature.  There was no evidence that any user in Connecticut accessed the defendant's web site or purchased services based on the web site, or that the web site advertisement was directed at Connecticut to a greater degree than at any other place in the nation.  Based on the fact that the web site was passive in nature and did not target Connecticut, the court held that "mere use of an internet advertisement, without more, is insufficient to constitute solicitation under Conn. Gen. Stat. § 33-929(f)(2)."  Id.

In the present case, Ikamobile's conduct does not suggest soliciting business in Connecticut to the degree that the conduct of the defendants in Thomason and Powder Coating Consultants suggested it, but on the other hand, its conduct is not as clearly removed from soliciting business as the conduct of the defendants in Am. Wholesalers Underwriting and Milne.  Ikamobile specifically gathers information about movie listings and show times at theaters in Connecticut, so it cannot be said that Ikamobile does not mention Connecticut.  Nor can it be said that while the information on the website

12

can be viewed in Connecticut, it does not target people who patronize theaters in Connecticut. It is fair to say that Ikamobile has engaged in affirmative measures to make its website attractive to customers of movie theaters in Connecticut. However, Ikamobile's website does not target individuals who patronize theaters in Connecticut as potential customers from whom Ikamobile hopes to get business. Although Ikamobile conveys information to customers of movie theaters in Connecticut, it does not do so for the purpose of soliciting or continuing to get business from Connecticut consumers, but instead, does so for the purpose of soliciting and continuing to get business from Ikamobile's advertisers, who give or will give business to Ikamobile because of the information Ikamobile puts on its website. The fact that Ikamobile places on its website information that would be of interest to Connecticut consumers is presumably used by Ikamobile in soliciting business from its advertisers and potential advertisers on the website, but that is not the same as Ikamobile soliciting business from Connecticut consumers. Also, there is no allegation that any such advertiser or potential advertiser is located in Connecticut.

   Ikamobile's maintaining a website that provides information about Connecticut movie theaters and can be accessed by people who patronize movie theaters in Connecticut is not properly characterized as an affirmative measure

designed to attract business for Ikamobile from Connecticut consumers. Thus, Ikamobile's actions do not constitute solicitation of business in Connecticut and it has not purposefully availed itself of the laws of the State of Connecticut as contemplated by § 33-929(f)(2). Accordingly, the court concludes that it does not have long arm jurisdiction over Ikamobile.

In light of the foregoing, it is not necessary to address whether asserting jurisdiction would offend due process or Ikamobile's contentions with respect to improper venue, improper service and failure to state a claim upon which relief can be granted.

**IV. Conclusion**

For the foregoing reasons, the defendants' Motion to Dismiss (Doc. No. 10) is hereby GRANTED. This case is dismissed.

The Clerk shall close this case.

Dated this 12th day of August, 2011 at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
